NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1826-15T4

EDWARD GRIMES,

        Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

        Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **December 5, 2017**
>
> **APPELLATE DIVISION**

Submitted May 31, 2017 — Decided December 5, 2017

Before Judges Messano, Suter, and Grall.

On appeal from New Jersey Department of
Corrections.

Edward Grimes, appellant pro se.

Christopher S. Porrino, Attorney General,
attorney for respondent (Lisa A. Puglisi,
Assistant Attorney General, of counsel;
Christopher C. Josephson, Deputy Attorney
General, on the brief).

PER CURIAM

    The New Jersey Department of Corrections (DOC) has

informally adopted a policy that "[for] security reasons," does

not permit inmates to place phone calls to "cellular, business

or non-traditional telephone service numbers" (calling policy).[1]
As DOC acknowledges, the calling policy applies in all DOC's
correctional facilities and "is not codified in statute or
regulation."

Edward Grimes is an inmate confined at the New Jersey State
Prison (NJSP). His relatives live in other states and none have
a phone other than a cell phone. After Grimes's several
attempts to obtain an explanation for and change of the calling
policy by invoking the inmate remedy process, N.J.A.C. 10A:1-
4.1, -4.5 to -4.6, DOC provided this final response:

> [T]he [DOC] prohibits inmates from making
> calls to cellular telephones. This practice
> is in effect for a number of security
> reasons. Family members and friends of an
> inmate will be unable to accept telephone
> calls unless they have a functioning land
> line telephone. The [DOC] strongly
> encourages inmates to correspond with family
> and friends through letters in addition to

---

[1] The quoted description is from DOC's website: Department of Corrections, http://www.state.nj.us/corrections/pages/InmateTelephoneSystemInfo.html (last visited on Nov. 7, 2017).
We cite DOC's website because its description and DOC's response to the inmate who appeals are the only statements from the Commissioner's Central Office that the record and legal research have disclosed. Inmate Handbooks are developed at each correctional facility and are reviewed by an assistant commissioner. N.J.A.C. 10A:8-1.3, -3.1 to -3.5.

> telephone calls in an effort to maintain
> strong family ties.[2]

> [Emphasis added.]

Grimes appeals and challenges the calling policy and DOC's informal action establishing and implementing it. R. 2:2-3(a)(2). He contends the policy was not adopted in compliance with the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -31. Grimes also asserts violations of United States Constitution: failure to provide procedural protections required by the Due Process Clause; and violations of the Equal Protection Clause of the Fourteenth Amendment and the First Amendment, "applicable to the States through the Fourteenth Amendment," Reed v. Town of Gilbert, ___ U.S. ___, 135 S. Ct. 2218, 2226, 192 L. Ed. 2d 236, 245 (2015).

We conclude the APA requires adoption of the calling policy in conformity with the rulemaking procedures of the APA, N.J.S.A. 52:14B-4 to -5, and remand to the Commissioner for commencement of that process.[3] We further conclude the record on

---

[2] Generally, the Commissioner's Central Office staff has no role in the inmate remedy system; Grimes was granted additional consideration. N.J.A.C. 10A:1-4.1, -4.5 to -4.6.

[3] Although Grimes first asserted his APA claim in his reply brief, we address the question because of its "public importance." Coastal Grp. v. Planned Real Estate Deve. Sec. Dep't of Cmty. Affairs, 267 N.J. Super. 49, 56 (App. Div. 1993). In addition, DOC's candid acknowledgment that the calling policy

(continued)

appeal, even as supplemented by the parties with leave of court, is inadequate to permit proper review of his constitutional claims. See State v. Robinson, 200 N.J. 1, 20-21 (2009); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234-35 (1973). We are, however, convinced that immediate invalidation of the calling policy would leave a void and create a sudden disruption detrimental to important interests of the inmates, DOC and the public. Accordingly, we exercise our discretion to keep the calling policy in place pending cure of the APA-violation by promulgation of a regulation in conformity with the APA. See Hampton v. Dep't Corr., 336 N.J. Super. 520, 530 (App. Div. 2001); Dep't of Corr. v. McNeil, 209 N.J. Super. 120, 125-26 (App. Div. 1986).

I.

Telephone calls are one of many modes of communication between inmates and their relatives and friends, which DOC authorizes, regulates and lists among the inmates' rights and privileges. N.J.A.C. 10A:8-3.5(b)(3)(iii); 10A:18-1.1(a). Other modes of communication include visits, correspondence, packages and publications. N.J.A.C. 10A:8-3.5(b)(3)(iii); 10A:18-1.1(a). In addition, since 2015, NJSP has allowed

_____

(continued)
is not codified in a statute or regulation most likely invited the responsive challenge.

inmates to receive emails and photos sent by cell phone. DOC has made that possible with a kiosk system installed in several facilities, including NJSP. The service provider delays transmission and receipt for fifteen minutes to permit review by DOC staff.[4] By regulation promulgated pursuant to the APA, calls placed by inmates "may be monitored and recorded." N.J.A.C. 10A:18-8.3.

Each correctional facility's handbook must include written procedures the facility must develop to allow its inmates reasonable and equitable access to public telephones. The procedures must address hours of availability, duration of calls and "[a]ny limitation." N.J.A.C. 10A:18-8.1(a), -8.2.

NJSP's 2016 handbook explains: DOC has made public telephones available for inmate use in order "to keep and to strengthen ties with family, friends, community and the courts." It also describes what an inmate must do to use the system.

An inmate must obtain an individual personal identification number (IPIN) and complete a form providing the names and numbers of no more than ten relatives, friends and acquaintances. DOC then verifies the names and numbers. Thereafter, each number must be approved by DOC and the Global

---

[4] This information is set forth in a certification of the Chief of DOC's Special Investigation Division (SID) submitted by DOC.

Tel Link Corporation (GTL), the service provider for the inmate phone system.  An inmate's IPIN-list (a list of that inmate's numbers verified and approved) is not activated until all steps are completed.  The system does not transmit a call to a number that is not on the inmate's IPIN-list.

The calling policy is not stated in a regulation or reproduced in the NJSP's handbook; it is described.  NJSP's 2016 handbook's description is stated differently than DOC's description on its website, and that handbook contains two differing descriptions.  One directs inmates to tell people they want to call that they must have a "<u>Traditional land line phone only</u>."  (Emphasis added.).  Another identifies numbers for a "Cell Phone" and numbers for phones with "Non Traditional Telephone Services (i.e.; Voice-over-Internet Protocol VoIP) as prohibited numbers an inmate may not submit for approval.

There are four different descriptions of numbers subject to the calling policy in this record: 1) "non-traditional telephone service numbers"; 2) numbers for "Non Traditional Telephone Services (i.e.; Voice-over-Internet Protocol VoIP)"; 3) "Traditional land line phone only"; and, 4) "functioning land line telephone."  Presumably the inconsistency is an unintended consequence of DOC's informal adoption of the calling policy,

6                                                        A-1826-15T4

which would have been detected and resolved in the process of promulgating a regulation pursuant to the APA.

The record does not permit us to identify with certainty when the calling policy took effect. Because NJSP's 2007 handbook does not mention the type of phone or phone service recipients of an inmates' calls must have and NJSP's 2016 handbook does, it was likely implemented between those dates. Most likely it was implemented in April 2010; an April 8, 2010 memo from the Administrator of NJSP to the facility's inmate population gives notice of a Zero Tolerance policy and provides "examples" of prohibited IPIN telephone numbers consistent with those listed in NJSP's 2016 handbook. But the Chief of DOC's Special Investigation Division (SID) certified, to the best of his recollection, the policy was in place in 1989, when he was first employed by DOC.

Grimes, as he did during the inmate remedy process, points to what he perceives to be inexplicable inconsistencies and practical problems with the calling policy. In 2015, NJSP was allowing inmates to receive emails and photos sent by cell phone and, at the same time, prohibiting him from calling his relatives' cell phone numbers, even those numbers approved and verified before the policy was implemented. Grimes also

mentions the security measures in place — call monitoring and recording and the pre-approval process.

Grimes supplemented the record with an order entered by a District Court Judge of the United States District Court for the District of New Jersey,[5] which denies DOC's motion to dismiss an action challenging the calling policy. The order includes statistics on the number of households with only wireless telephones as of 2013 and reports that the court's initial research had not revealed a single state with a ban on inmates' calls to cell phones as broad as DOC's calling policy.

Grimes, without identifying his source, asserts that eighty to ninety percent of all phone calls involve cell phones and many people, including his sister and his emergency contact, cannot afford a cell phone _and_ a landline. Grimes submits, as he did in his inmate remedy form, that DOC and its inmates should join the 21st century, a time in which "land lines . . . are rapidly becoming obsolete." Finally, Grimes notes what he views as hypocrisy — NJSP's proclaimed interest in inmates

---

[5] <u>Shamsiddin A. Abdur-Raheem v. N.J. Dep't of Corr.</u> (order denying motion to dismiss No. 15-1743, (DNJ May 31, 2016). Three other law suits challenging DOC's calling policy were dismissed for failure to state a claim by different judges. <u>Graf v. Lanigan</u>, No. 14-2613, 2016 U.S. Dist. LEXIS 9198 at *1, *2 (D.N.J. Jan. 27, 2016); <u>Love v. N.J. Dep't of Corr.</u>, No. 14-5629, 2015 U.S. Dist. LEXIS 61678, (D.N.J. May 12, 2015); <u>Stokes v. Lanigan</u>, No. 12-1478 (PGS), 2012 U.S. Dist. LEXIS 142185, at *1 (D.N.J. Oct. 2, 2012).

communicating with family members and a calling policy thwarting such communication.

The Chief of SID, in his certification supplementing the record, highlights security risks favoring the policy: cell phones can be carried nearly anywhere and used to orchestrate criminal activity in real time in and outside of prison, including escape; landline billing is easier to obtain; cell phone accounts may have multiple users; a past-incident involving a named-inmate, which the named-inmate contradicts in his certification; and the problems presented when inmates have cell phones in prison, which seem irrelevant.

Throughout the inmate remedy process, Grimes acknowledged the calling policy's existence and stressed it could and should be changed. The purpose of the inmate remedy system is to allow inmates to "formally communicate with correctional staff to request information" and "present issues." N.J.A.C. 10:1-4.1, -4.5 (emphasis added); see Ortiz v. N.J. Dept. of Corr., 406 N.J. Super. 63, 66-67 (App. Div. 2009). Surprisingly, no NJSP or DOC staff member who responded to Grimes during that process informed him that N.J.A.C. 10A:1-1.2 authorizes petitions for rulemaking.

Agencies may "act informally, or formally through rulemaking or adjudication in administrative hearings." <u>Texter v. Dep't of Human Servs.</u>, 88 <u>N.J.</u> 376, 383-84 (1982) (citations omitted); <u>see</u> <u>N.J.S.A.</u> 52:14B-3(2). An agency's ability to select procedures it deems appropriate to accomplish its statutory mission is limited by "the strictures of due process and of the [APA]." <u>In re Solid Waste Util. Cus. Lists</u>, 106 <u>N.J.</u> 508, 519 (1987). The Department of Corrections' responsibilities are broad. <u>N.J.S.A.</u> 30:1B-3 (DOC's purpose includes protection of the public and the care, discipline, treatment and preparation of inmates for "release and reintegration into the community").

The APA defines the critical terms "administrative rule" and "rule" to include an "agency statement of general applicability and continuing effect that implements or interprets . . . policy" and to exclude "statements concerning the internal management or discipline of any agency," and "intra-agency statements." <u>N.J.S.A.</u> 52:14B-3.2. In <u>Metromedia, Inc. v. Director, Div. of Taxation</u>, 97 <u>N.J.</u> 313, 331-32 (1984), the Court explained that rulemaking is required "when all or most" of six relevant factors the Court identified in that case "are present and preponderate in favor of the rule-making."

Taking the six factors favoring rulemaking in order and beginning with the three involving the scope and reach of the policy: (1) DOC's calling policy applies to all inmates in correctional facilities and to their relatives and friends; it has "wide coverage encompassing a large segment of the regulated or general public," not an "individual" or "select group." (2) The calling policy is a blanket policy with no exceptions; it is "intended to" be applied "generally and uniformly to all similarly situated persons," and it is. (3) The calling policy could not possibly be applied to reach back in time; a ban on outgoing phone calls necessarily operates "prospectively." Ibid.

We turn to the remaining factors addressing content: (4) The absence of any mention of cell phones or types of service in NJSP's 2007 handbook and the prohibition of calls on that basis stated in the 2016 NJSP handbook suggests the calling policy imposes a new restriction not inferable on any basis other than the breadth of the Commissioner's discretion to operate the correctional facilities. (5) In the absence of any evidence suggesting otherwise, the policy "reflects [a new] administrative policy" or a clear change in policy, but because the Chief of DOC's SID represents the policy may be longstanding and the documentary evidence undercuts, but does not

11                                                          A-1826-15T4

definitively refute that SID's assertion, we give this factor no weight in either direction. Finally, (6) DOC's calling policy is a decision on policy that involves an exercise of the Commissioner's discretion and expertise in balancing the rehabilitative benefits of communication against the risk posed by communication through modern and rapidly changing modes.

The five Metromedia factors that are established all weigh in favor of rulemaking in conformity with APA procedures. But the inquiry cannot end until we determine whether the calling policy is exempt from the APA as either a statement "concerning the internal management or discipline" of DOC or as an "intra-agency" statement of DOC. N.J.S.A. 52:14B-3.2.

In Woodland Private Study Group v. State, 109 N.J. 62, 74 (1987), the Court addressed and ultimately defined "an intra-agency" statement as (1) a communication between agency members that (2) does not have a substantial impact on (3) the rights or legitimate interests of the regulated public." Id. at 75. A legitimate interest is a matter "of justifiable concern." Id. at 74.

In Woodland the Court instructed: "The inquiry is whether the agency's interest in streamlined procedure is outweighed by the importance of the interests that are affected. Generally where the interest implicated is legitimate, the balance will

tilt in favor of notice and hearing for internal actions that have a substantial impact on that interest."  Id. at 75.

DOC's final response to Grimes, quoted at the outset of this opinion, highlights the policy's impact on the legitimate interest of the entire group of inmates and that group's relatives and friends.  Repeating the critical portion of DOC's response, "Family members and friends of an inmate will be unable to accept telephone calls unless they have a functioning land line telephone."  Another portion of the response implicitly recognizes the legitimacy and significance of such conversation and the impact of the restriction by advising, DOC "strongly encourages" letter writing "to maintain strong family ties."

The conversation of family members and friends restricted by the calling policy is the mutual and legitimate interest of the participants, and its restriction is a matter of mutual justifiable concern.  Id. at 74-75.  The minimal burden of rulemaking is far outweighed by the legitimate interests the calling policy affects.  Thus, Woodland bars an exemption from rulemaking as an "intra-agency" statement.

We also conclude the calling policy's significant impact on members of the public precludes exemption as a statement of "internal management or discipline."  N.J.S.A. 52:14B-2.  The

policy directly addresses conduct of inmates' relatives and friends. See Bullet Hole, Inc. v. Dunbar, 335 N.J. Super. 562, 589 (App. Div. (2000) (finding an impact on much less significant basis). The number of people outside the correctional facility affected by the calling policy's limitations on conversation is a group with membership that could equal, and potentially significantly exceed, the number of inmates; after all, DOC permits an inmate to include up to ten names and phone numbers on his or her IPIN-list. The calling policy concerns inmates, but it more directly impacts people outside the prisons. Thus, the internal management and discipline exception does not apply.

Importantly, compliance with the APA procedures serves the interests of "fairness and due process." Holmdel Builders Ass'n v. Holmdel, 121 N.J. 550, 578 (1990). Compliance requires notice and an opportunity to present pertinent information, and compliance also requires an articulation of the basis, standards and principles informing the exercise of the Commissioner's discretion. In re Provision of Basic Generation Serv., 205 N.J. 339, 349 (2011); Holmdel Builders, supra, 121 N.J. at 578; Jenkins v. Fauver, 108 N.J. 239, 255 (1987); Metromedia, supra, 97 N.J. at 331; Avant v. Clifford, 67 N.J. 496, 564 (1975) (Conford, P.J.A.D., Temporarily Assigned, concurring) (endorsing

the value of public commentary prior to adoption or amendment of prison regulations, which an undivided Court endorsed in Jenkins, supra, 108 N.J. at 255-56).

Because the APA requires adoption of the calling policy in conformity with its rulemaking procedures, the informally adopted calling policy is invalid. As indicated at the outset of this opinion, the likely disruption of immediate invalidation would disserve the important institutional, public and personal interest implicated. Accordingly, we remand for prompt commencement of rulemaking and continue the current policy pending a rulemaking proceeding.

Reversed and remanded to the Commissioner with direction to proceed without delay.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION